[Cite as *State v. Smith*, 2018-Ohio-2271.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 17AP-636 |
| v. | : | (C.P.C. No. 17CR-157) |
| Joshua F. Smith, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

## D E C I S I O N

### Rendered on June 12, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard*.

**On brief:** *The Law Office of Brian Jones, LLC, Brian G. Jones* and *Elizabeth E. Osorio*, for appellant. **Argued:** *Elizabeth E. Osorio*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Joshua F. Smith, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a guilty plea entered by appellant.

{¶ 2} The charges against appellant arise out of his participation in drug trafficking. The most expansive scheme involved obtaining unwarranted prescriptions for oxycodone painkillers from a corrupt physician in Florida, filling the prescriptions in Michigan and elsewhere, and reselling the pills in central Ohio. Several persons participated in this scheme as couriers and distributors under appellant's direction, receiving travel expenses and instructions from him.

{¶ 3}   Two indictments resulted.  In the first, Franklin C.P. No. 17CR-000157, a 39-count indictment issued on January 9, 2017 charged appellant and several other co-offenders with crimes arising from the oxycodone operation.  The counts pertaining to appellant consisted of one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32, a felony of the first degree; one count of aggravated funding of drug trafficking in violation of R.C. 2925.05, a felony of the first degree; and 27 counts of aggravated trafficking in drugs in violation of R.C. 2925.03, felonies of the second degree.  Appellant pleaded not guilty to these charges on January 11, 2017 and posted bond the same day.

{¶ 4}   The second indictment, Franklin C.P. No. 17CR-001817, issued on March 31, 2017, added three counts of aggravated trafficking involving bulk amounts of methamphetamine.  Appellant pleaded not guilty to these charges on April 5, 2017.

{¶ 5}   In addition, continued investigation produced evidence of additional trafficking in methamphetamine by appellant, but these incidents did not result in further indictment.  The resulting arrest on February 13, 2017 coincided with a bond revocation in case No. 17CR-000157.

{¶ 6}   After plea negotiations, the parties agreed appellant would plead guilty to engaging in a pattern of corrupt activity and aggravated funding of drug trafficking counts of the first indictment and 13 of the first indictment's counts for aggravated trafficking in drugs.  Appellant would further plead guilty to one of the three aggravated trafficking counts from the second indictment.  The state agreed to dismiss all other charges in the two indictments and would not seek indictment of charges arising from the later methamphetamine buys.  The parties and judge agreed the statutory minimum total sentence for the convictions was 11 years and the maximum 126 years.  The parties agreed they would submit no joint or separate recommendations of sentence.

{¶ 7}   At the plea hearing, the trial judge noted he had previously indicated to appellant's trial counsel that appellant's bond would be lowered in connection with the plea.  The judge expressed he was doing so reluctantly in light of the prior bond revocation and "[o]ver objection of the prosecution."  (Plea Tr. at 19.)  The judge nonetheless reinstated appellant's bond in one case and lowered it in the other, in order to allow appellant an

opportunity to put his affairs in order before sentencing. The judge also ordered a pre-sentence investigation ("PSI").

{¶ 8} The day following the plea hearing, the prosecution returned with a motion seeking to immediately revoke the newly lowered bond on the basis of conduct by appellant that predated the plea hearing. The principal complaint was appellant's continued contact with co-offenders in blatant violation of a no-contact order. Nine days later, the trial court revoked appellant's bond. In connection with the revocation, the prosecution provided supplemental discovery consisting of an audio recording of jailhouse phone calls made by appellant.

{¶ 9} On August 3, 2017, appellant appeared for sentencing. The state went over the unfavorable PSI report and recounted the content of numerous recorded telephone conversations. Appellant spoke on his own behalf and presented testimony from his father and grandmother. The state again declined to recommend a specific sentence; counsel for appellant argued that the minimum of 11 years appropriately served deterrent and punitive purposes.

{¶ 10} The court imposed a term of 11 years on the charge of engaging in a pattern of corrupt activity, 8 years on the charge of aggravated funding of drug trafficking, and 2 years each on the 13 aggravated trafficking counts. The first two terms were to be served consecutively and the others concurrently with each other and the first two counts. This resulted in a total sentence of 19 years in case No. 17CR-000157. Under case No. 17CR-001817, the court sentenced appellant to a term of three years imprisonment on the sole remaining count, to be served consecutively with the sentence imposed in the first indictment. Appellant thus received a total prison term under both case numbers of 22 years imprisonment.

{¶ 11} Appellant has timely appealed and brings the following three assignments of error:

> [1.] The trial court erred in accepting defendant-appellant Smith's guilty plea as knowingly, voluntarily, and intelligently entered where the prosecution mislead the defendant and counsel regarding the bargain. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709 (1969); Crim.R. 11.

[2.] Trial counsel offered ineffective assistance of counsel by failing to review the discovery disc of jail calls disclosed after change of plea but before sentencing, resulting in prejudice to the defendant-appellant.

[3.] Trial counsel offered ineffective assistance of counsel by failing to submit testimony or evidence correcting the "worst PSI ever seen" during the sentencing hearing, resulting in prejudice to the defendant-appellant.

{¶ 12} Appellant's first assignment of error asserts that his change of plea to guilty was based on an inducement in the form of lowered bond and that the state's action in immediately seeking a bond revocation deprived appellant of the inducement that had led him to accept the plea agreement. As a result, he claims his plea was not knowing and voluntary because he could not be aware the state would promptly act to deprive him of the lowered bond.

{¶ 13} " 'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.' " *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). To be voluntary, a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises. *Brady v. United States*, 397 U.S. 742, 755 (1970).

{¶ 14} A defendant who challenges his or her guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must demonstrate prejudice in order to invalidate the plea. *Veney* at ¶ 15; *State v. Young*, 10th Dist. No. 10AP-292, 2010-Ohio-5873, ¶ 9. "The test for prejudice is 'whether the plea would have otherwise been made.' " *State v. Williams*, 10th Dist. No. 10AP-1135, 2011-Ohio-6231, ¶ 36, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "A determination of whether a plea was knowingly, intelligently, and voluntarily entered is based upon a review of the record." *Young* at ¶ 6, citing *State v. Vinson*, 10th Dist. No. 08AP-903, 2009-Ohio-3240, ¶ 7, citing *State v. Spates*, 64 Ohio St.3d 269, 272 (1992).

{¶ 15} Appellant relies on the case of *State v. Bowen*, 52 Ohio St.2d 27 (1977), in which a prosecutor agreed to recommend a concurrent prison term despite the fact that circumstances of the defendant's crime made consecutive terms mandatory.  The Supreme Court of Ohio held  the prosecution's recommendation formed an improper inducement to plead:

> Appellee's guilty plea and the inherent waiver of his fundamental constitutional rights were induced, in part, by appellant's promise to recommend to the court a statutorily proscribed act. Appellee's plea can be viewed neither as voluntary where induced by a promise, the very essence of which is nonperformable, nor as knowing where the fact of illegality was insufficiently delineated and, therefore, is void.

*Bowen* at 29, citing *Machibroda v. United States*, 368 U.S. 487, 493 (1962).

{¶ 16} Appellant asserts his case requires reversal under *Bowen* because the prosecutor "stood silent" during his plea hearing regarding the change of bond and then filed a motion to revoke the newly reinstated bond.  (Appellant's Brief at 14.)  Appellant argues the state thus allowed an inducement to be presented by the court and did so with the implied intent of negating that inducement at the earliest opportunity with facts already known to the prosecution and occurring prior to the plea hearing.  Appellant argues that under *Bowen*, the effect of this illusory inducement on the will of the defendant makes his plea bargain neither knowing nor voluntary.

{¶ 17} In response, the state points out the trial court specifically noted the state's objection to reduced and renewed bonds, although this objection seems to have been communicated prior to the plea hearing.  The characterization of the prosecutor as silently acquiescing to the bond is, therefore, not accurate.  As such, *Bowen* is fundamentally distinguishable from the case before us: in *Bowen*, clearly one important consideration was the prosecutor's promise to recommend concurrent prison terms that, by law, could not be imposed.  It was, therefore, the prosecutor's express and negotiated recommendation that induced the guilty plea in *Bowen*.  Here, the prosecutor extended no such promise to induce the plea.

{¶ 18} Although appellant's first assignment of error expressly states the alleged improper inducement of lowered bond was introduced by the prosecution, he appears to

further argue that the court itself extended the inducement.  That is not the assignment of error stated on appeal.  Pursuant to App.R. 12(A)(1)(b), appellate courts "determine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16."  Thus, this court rules on assignments of error only and will not address mere arguments.  *State v. Armor*, 10th Dist. No. 16AP-532, 2017-Ohio-396, ¶ 26; *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶ 70; *In re Estate of Taris*, 10th Dist. No. 04AP-1264, 2005-Ohio-1516, ¶ 5.

{¶ 19} Although here we have no developed record pertaining to the second revocation of bond, the court noted at sentencing that appellant had been strictly advised to have no further contact with co-offenders in his case and violated that order.  The timing of the court's learning of those violations is not explicitly stated by the court in the record at sentencing, but the court presumably became aware of these violations through the state's motion to revoke bond and the subsequent submission of jailhouse phone transcripts.  Although appellant may have justifiably believed he could benefit from the lowered bond, as he indeed did for nine days, appellant does not and probably could not argue on appeal that the revocation was improper in itself.  Nor can he argue the plea agreement required the state to turn a blind eye to his violation of the restrictions placed on conditions of release.

{¶ 20} Appellant's first assignment of error is accordingly overruled because, in the absence of any improper inducement, nothing in the record indicates appellant's plea was less than knowing and voluntary.

{¶ 21} Appellant's second assignment of error asserts he received ineffective assistance of trial counsel because his counsel appeared at the sentencing hearing without having reviewed the recorded jailhouse telephone calls that were disclosed by the prosecution in discovery after the plea hearing.

{¶ 22} In order to establish a claim of ineffective assistance of counsel in violation of the rights granted under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant must first demonstrate his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  The defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

{¶ 23}  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "  *Id.* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. *State v. Hester*, 45 Ohio St.2d 71, 75 (1976).

{¶ 24}  At the sentencing hearing, prosecution verbally described and emphasized many aspects of these recorded telephone conversations.  The prosecution summarized the contents of these conversations as indicating that appellant had a propensity for violence, that he had fabricated a fable involving health issues for his daughter in order to gain sympathy, that appellant's purported business buying and rehabilitating houses actually involved using properties as grow houses for marijuana, and that appellant had tampered with and threatened witnesses.

{¶ 25}  In addressing the prosecution's summary for these jailhouse conversations, appellant's trial counsel stated only that he was impressed by the prosecutor's exceptional and possibly personally vindictive devotion to the case given the amount and duration of phone calls described at the hearing.  Counsel then stated "I didn't come here and listen to 200 hours of phone calls to determine what's relevant and what's going to be relevant to what I can respond to or whether we can put each one of these phone calls in context." (Sentencing Tr. at 16.)

{¶ 26} Appellant now argues on appeal trial counsel was ineffective because the failure to review the phone transcripts deprived appellant of the opportunity to counter the prosecution's allegations based on those conversations.  Instead of countering with the specific content of those jailhouse conversations, appellant's trial counsel prepared a sentencing memorandum, reviewed the PSI, and presented two family members to speak

on appellant's behalf at sentencing.  Then, appellant's trial counsel deferred to appellant, who personally addressed the court and explained the content of the jailhouse calls and mitigated their impact.

{¶ 27} Trial counsel's decision not to review the lengthy jailhouse phone call transcripts is not, on its face, ineffective when trial counsel relied on other means to present mitigation and when appellant himself had the opportunity, perhaps more effectively than trial counsel could have, to explain the content of the conversations.  Appellant's second assignment of error is overruled.

{¶ 28} Appellant's third assignment of error asserts trial counsel was ineffective in failing to object to the presentencing investigation, which the trial court characterized as "the worst PSI I've seen, the worst."  (Sentencing Tr. at 22.)

{¶ 29} Trial counsel prepared a sentencing memorandum and called witnesses in mitigation.  Trial counsel also spoke to state the PSI did not reflect appellant's true nature as defense counsel, friends, and family knew appellant.

{¶ 30} While the contents of the PSI are prejudicial in the sense they did not help appellant's case, they are not challenged as inaccurate or improper, nor are they rebutted as to their factual veracity.  The PSI is available for review by this court on appeal.  It is lengthy, detailed, and not flattering to appellant.  The content of the PSI report is not attributable to the competence of appellant's trial counsel.  Trial counsel was not ineffective in this respect, and appellant's third assignment of error is overruled.

{¶ 31} In summary, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BRUNNER and HORTON, JJ., concur.

———————————